**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AARON DEIVAPRAKASH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONDÉ NAST DIGITAL,<br><br>Defendant. | Case No. 1:24-CV-06503 |

**DEFENDANT CONDÉ NAST DIGITAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201

*Attorneys for Defendant*
*CONDÉ NAST DIGITAL*

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ....... 1

II. STATEMENT OF PLAINTIFF'S ALLEGATIONS ....... 6

A. The Websites: www.newyorker.com and www.wired.com ....... 6

B. Plaintiff's Claims ....... 6

III. STANDARDS OF REVIEW ....... 8

A. Standard for Motion to Dismiss Pursuant to Federal Rule 12(b)(1) ....... 8

B. Standard for Motion to Dismiss Pursuant to Federal Rule 12(b)(6) ....... 9

IV. PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT. ....... 9

A. Constitutional Requirements For Standing ....... 9

B. Plaintiff Has Not and Cannot Establish A Concrete Harm. ....... 11

a. Plaintiff Has No Reasonable Expectation of Privacy in His Public IP Address. ....... 12

b. Nothing Condé Nast Did Was "Highly Offensive." ....... 14

V. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE CALIFORNIA INVASION OF PRIVACY ACT, SECTION 638.51(a). ....... 16

A. Plaintiff Lacks Statutory Standing to Sue under the California Pen Register Act. ....... 17

B. The Rule of Lenity Compels This Court to Dismiss Plaintiff's Complaint. ....... 19

VI. CONCLUSION ....... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....9, 10

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
635 F. App'x 351 (9th Cir. 2015)....14

*Bittner v. United States*,
598 U.S. 85 (2023)....21

*Carpenter v. United States*,
585 U.S. 296 (2018)....14

*Casillas v. Transitions Optical, Inc.*,
Case No. 23STCV30742 (Cal. Super. Ct. April 23, 2024)....18

*Cooper v. Bonobos, Inc.*,
No. 21 Civ. 854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022)....16

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
790 F.3d 411 (2d Cir. 2015)....9

*Crandon v. United States*,
494 U.S. 152, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990)....20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....12

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (Cal. Ct. App. 2011), *as modified* (June 7, 2011)....15

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....16

*Hancock v. Urb. Outfitters, Inc.*,
830 F.3d 511 (D.C. Cir. 2016)....14

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....14

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (Cal. 2009)....15, 16

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (Cal. 1994)....15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....15

*Kobayashi v. McMullin*,
No. 2:19-CV-06591-SSS (MAA), 2023 WL 11822286 (C.D. Cal. July 7, 2023)....10

*Leibovitz v. N.Y.C. Transit Auth.*,
252 F.3d 179 (2d Cir. 2001)....10

*Liau v. Weee! Inc.*,
No. 23 CIV. 1177 (PAE), 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024)....16

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024)....21

*Loder v. City of Glendale*,
14 Cal. 4th 846 (Cal. 1997)....12

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....9

*Mikulsky v. Noom, Inc.*,
No. 3:23-CV-00285-H-MSB, 2023 WL 4567096 (S.D. Cal. July 17, 2023)....16

*Miller v. Hearst Commc'ns, Inc.*,
No. CV 12-0733-GHK, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012)....17

*Morrison v. Nat'l Austl. Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010)....9

*Palacios v. Fandom, Inc.*,
Case 24STCV11264 (Cal. Super. Ct. September 24, 2024)....21

*People v. Nuckles*
56 Cal. 4th 601 (Cal. 2013)....19

*People v. Reynoza*,
15 Cal. 5th 982, 546 P.3d 564 (Cal. 2024)....19

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ....................15

*Safari Club Int'l v. Rudolph*,
862 F.3d 1113 (9th Cir. 2017) ....................12

*Shah v. Fandom, Inc.*,
No. 24-CtV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024).................... *passim*

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (Cal. 1998)....................12

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)....................11

*Spokeo Inc. v. Robins*,
136 S. Ct. 1540 (2016)....................10, 11

*Sputz v. Alltran Fin., LP*,
No. 21-CV-4663 (CS), 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021)....................11, 12

*Strike 3 Holdings, LLC v. Doe*,
No. 17CV2317-JAH (BLM), 2017 WL 6389848 (S.D. Cal. Dec. 14, 2017) ....................13

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)....................11, 12

*United States v. Balint*,
201 F.3d 928 (7th Cir. 2000) ....................20

*United States v. Contreras*,
905 F.3d 853 (5th Cir. 2018) ....................13

*United States v. Jenkins*,
No. 1:18-CR-00181, 2019 WL 1568154 (N.D. Ga. Apr. 11, 2019)....................13, 14

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019)....................13

*United States v. Matish*,
193 F. Supp. 3d 585 (E.D. Va. 2016) ....................14

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) ....................19

*United States v. Saathoff*,
708 F. Supp. 2d 1020 (S.D. Cal. 2010)....................21

*United States v. Thompson/Ctr. Arms Co.*,
504 U.S. 505 (1992)....................20

*Vita v. New England Baptist Hosp.*,
No. SJC-13542, 2024 WL 4558621 (Mass. Oct. 24, 2024)....................22

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*,
215 F.3d 247 (2d Cir. 2000)....................9

**Statutes**

Cal. Penal Code § 637.2 (a)....................17

Cal. Penal Code § 638.50(b)....................17

Cal. Penal Code § 638.51(c)....................20

Cal. Penal Code § 638.52(d)(3)....................1

California Consumer Protection Act....................2

California Pen Register Act (CIPA)....................*passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(1)....................1, 9

Federal Rule of Civil Procedure 12(b)(6)....................1, 9

Defendant Condé Nast Digital ("Condé Nast") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Aaron Deivaprakash's ("Plaintiff") Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. PRELIMINARY STATEMENT

Plaintiff brings this lawsuit against Condé Nast asserting a single claim for violation of California's Invasion of Privacy Act ("CIPA"), Penal Code § 638.51(a), also known as California's Pen Register Statute, based on the collection and sharing of the publicly available IP addresses Plaintiff used to visit Condé Nast-operated websites. The California Pen Register Statute, which was enacted prior to the advent of the modern internet, prohibits any "person" from "install[ing] or us[ing] a pen register…without first obtaining a court order" and was intended to balance "law enforcement agencies[']… legitimate need to employ modern listening devices and techniques in the investigation of criminal conduct and the apprehension of lawbreakers" with the need to protect California citizens from "the invasion of privacy resulting from the continual and increasing use of such devices and techniques." In other words, the purpose of the California Pen Register Statute was to check unfettered surveillance by law enforcement of unsuspecting and specifically identifiable[1] citizens.

Despite this clear and limited purpose, plaintiffs' lawyers around the country have sought to stretch application of the California Pen Register Statute beyond the bounds of reason, claiming that it applies to ubiquitous online tools used by website operators, like Condé Nast, to enable visitors to access sites, monitor traffic on sites, improve site performance, and increase

[1] Indeed, a court order authorizing the use of a pen register device must include "[t]he number and, if known, physical location of the telephone line to which the pen register…is to be attached." Cal. Penal Code § 638.52(d)(3).

the effectiveness of advertisements, as authorized by privacy and data use laws of the internet era, including the California Consumer Protection Act ("CCPA"). Plaintiff here is no different.

In truth, Plaintiff is not suing Condé Nast because he was injured by anything Condé Nast did. He wasn't, and he makes no allegation to the contrary. Plaintiff is not suing Condé Nast because Condé Nast violated a California statute. It didn't. Plaintiff is suing Condé Nast because the California Pen Register Statute carries with it a $5,000 per violation statutory damages provision and because, thus far, some courts have allowed other similar claims to proceed into discovery, thereby driving up costs and, in turn, settlement value.

One of those courts is the Northern District of California. In its recent decision—*Shah v. Fandom, Inc.*[2]—the Northern District refused to dismiss a California Pen Register Statute claim at the pleading phase. The *Shah* decision, however, has no effect on this case because the Northern District decided *Shah* without the benefit of any explanation as to how the technology—simple java script code that Plaintiff ominously calls "trackers" —actually works. The court in *Shah* was forced to rely solely on the plaintiff's factually-devoid and, at times, misleading allegations, reaching a result based on an incomplete explanation of the technology at play. This Court is not so limited. Because, here, Condé Nast challenges Plaintiff's Article III standing, the Court can and should consider as admissible evidence Kenneth Oliver's declaration[3] ("Oliver Decl.") explaining how IP addresses work.

Essentially, the internet is an avenue through which two otherwise unconnected devices can communicate. Those devices locate one another using an Internet Protocol ("IP") address. There are two main types of IP addresses: (1) a private IP address and (2) a public IP address. They serve different purposes. A private IP address allows devices to communicate with other

[2] No. 24-CtV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024).
[3] Declaration of Kenneth Oliver in Support of Defendant Condé Nast Digital's Motion to Dismiss Complaint.

devices on their local network (i.e., home or office Wi-Fi). A public IP address allows devices to communicate with other devices and websites on the open internet through a gateway device (i.e., a router). As its name suggests, a public IP address is visible to anyone on the internet and, indeed, is sent to every website a device visits. A private IP address is only visible to other devices on the same local network and is never sent outside the local network. As proof of this fact, one need only google "What is my IP address?" Google will display the public IP address being used, but not the private IP address of the device because the private IP address never leaves the local network.

Because public IP addresses are network-specific and not device-specific, every device on a local network uses the same public IP address. Therefore, if two users on two different devices are logged onto the same network and each searches "what's my IP address?", the IP address returned for both searches would be the same public IP address.

That does not mean, however, that public IP addresses are always the same. Public IP addresses are assigned to each local network by the Internet Service Provider ("ISP") that provides internet access to that local network. These assignments can and do change over time. Further, if each device in the example above connects to a different local network (i.e., from a home network to a work network) and visits a website, the public IP address associated with each of those devices would be different than it was when on their home networks; each would now be the public IP address associated with the new network.

In contrast, Private IP addresses are automatically generated by the local network's gateway device and are necessarily device-specific. All private IP addresses must fall within specified numerical ranges: 10.x.x.x, 172.16.x.x, 172.31.x.x, and192.168.x.x. IP addresses that do not fall within these numerical ranges are not private IP addresses.

In sum, a private IP address ***can*** identify a specific device but ***is never shared outside of the local network*** and would therefore never be visible to a website operator such as Condé Nast. A public IP address ***cannot*** identify a specific device and ***is shared outside of the local network***.

It is within this context, which was *not* presented to or considered by the Court in *Shah,* that Plaintiff's allegations must be analyzed. Plaintiff alleges that:

- Condé Nast owns and operates the www.newyorker.com and www.wired.com (collectively, the "Websites");
- The Websites include java script code that, among other things, creates a separate line of communication between website users and third parties (i.e., Google, Audiencerate, and Neustar);
- Between 2022 and March 2024, Plaintiff visited the Websites multiples times, each time from his computer;
- In order to visit the Websites, the IP address Plaintiff was using at the time was affirmatively sent to Condé Nast; and
- It was also sent directly to Google, Audiencerate, and Neustar as a result of the java script included in the websites' coding.

Although Plaintiff does not differentiate between his private and public IP address, the screenshots included in Plaintiff's Complaint show that the IP addresses Plaintiff alleges were collected are ***public*** IP addresses. Specifically, the screenshots purportedly show Google and Audiencerate collecting the IP address 75.58.11.228, and Neustar collecting the IP address 12.172.211.58. Both of those IP address are public IP addresses.

Contrary to Plaintiff's claim, there can be no invasion of privacy from the collection or sharing of public IP addresses. Courts have routinely held that an internet user, such as Plaintiff,

has no reasonable expectation of privacy in his or her public IP address because, true to its name, a public IP address is public. Indeed, a user would never be able to visit any website without first providing the site with his or her public IP address. Even beyond that, the information that can be gleaned from a public IP address—general geographic location (country, city, region, or zip code) and ISP—is not private information. For example, courts have routinely held that the disclosure of one's ZIP code, which, much like a public IP address, identifies a general location, does not give rise to an invasion of privacy.

Plaintiff fails to allege injury-in-fact, and thereby fails to establish Article III standing. His Complaint must be dismissed.

In addition to failing to allege injury-in-fact, Plaintiff also fails to allege an actionable violation of California's Pen Register Statute. As noted above, the Pen Register Statute was intended to protect California citizens from "the invasion of privacy resulting from the continual and increasing use of" of listening devices and techniques. But, as discussed above, there is no privacy in public IP addresses to protect. The two public IP addresses allegedly collected here did not identify Plaintiff, and the general location information that can be gleaned from a public IP address does not change that fact. Knowing that a person is present in a specific country, city, region, or zip code in no way identifies that person. *Shah* does not save Plaintiff's claim from these deficiencies when the decision failed to acknowledge, let alone consider, the crucial dichotomy between public and private IP address collection.

Plaintiff fails to allege an injury-in-fact for purposes of Article III standing; therefore, his Complaint must be dismissed. Plaintiff likewise fails to allege sufficient facts to state a claim upon which relief can be granted under CIPA. His Complaint must be dismissed for this reason, too.

## II. STATEMENT OF PLAINTIFF'S ALLEGATIONS

### A. The Websites: www.newyorker.com and www.wired.com

Condé Nast is a media company that owns and operates the websites www.newyorker.com ("New Yorker") and www.wired.com ("Wired"). Compl. ¶ 1. The New Yorker is a publication widely known for its news and cultural coverage, expansive audio division, award-winning film-and-television arm, and a range of live events featuring people of note. *Id.* at ¶ 62. Wired is a technology-focused publication that illuminates how technology is changing culture, business, science, and design by providing news on these issues. *Id.* at ¶ 63.

When an internet user visits either of the Websites, they may read news articles, read reviews, watch videos, listen to podcasts, or subscribe to the services that each respective publication offers online. *Id.* ¶¶ at 62-63.

### B. Plaintiff's Claims

Plaintiff Aaron Deivaprakash is a resident of Dublin, California. *Id.* at ¶ 6. He claims to have visited the Websites from his computer in California "multiple times," spanning from as early as 2012 to as recently as March 2024. *Id.* at ¶ 92. He provides no additional detail as to the circumstances of his visits, including why he visited the Websites or whether he had any interaction with The New Yorker, Wired, or Condé Nast outside of his visits to the Websites. *See generally id.*

At some undisclosed point, Plaintiff allegedly formed the belief that Condé Nast had installed, in his words, three different "trackers" on his browser when he visited either of the Websites. *Id.* at ¶ 2. These "trackers," which Plaintiff identifies as DoubleClick, Audiencerate, and AGKN[4], were then used to collect his IP address. *Id.* at ¶ 31.

---

[4] According to Plaintiff, DoubleClick was developed and provided to Condé Nast by Google. [*Id.* at ¶ 32.] AGKN was developed and provided to Condé Nast by Neustar. [*Id.* at ¶ 52.]

In his Complaint, Plaintiff includes three screenshots, purportedly showing the "trackers" collecting his IP address while he was on one of the two Websites. *Id.* at Figures 3 (DoubleClick), 4 (Audiencerate), 5 (AGKN). For DoubleClick and Audiencerate, Plaintiff's screenshots purportedly show them collecting his 75.58.11.228 IP address. *Id.* at Figures 3, 4. For AGKN, Plaintiff's screenshot purportedly shows AGKN collecting his 12.172.211.58 IP address. *Id.* at Figure 5. Plaintiff includes these two IP addresses in the Complaint, which is publicly filed, and accessible to anyone with an internet connection.

Plaintiff goes on to explain in the Complaint the information ***he believes*** can be gleaned from the IP addresses collected by the "trackers" and how ***he believes*** the entities that receive the IP addresses (i.e., Google, Audiencerate, and Neustar) are using that information. Specifically, Plaintiff alleges that "[a]n IP address is a unique identifier for a device, which is expressed as four sets of numbers separated by periods[,]" with "[t]he first two sets of numbers indicat[ing] what network the device is on…., and the second two sets of numbers identify[ing] the specific device."[5] *Id.* at ¶ 23. He further claims that an "IP address contains geographical location," *id.* at ¶ 24, and can be used to identify a "device's state, city, and zip code,"[6] *id.* at ¶ 24. From this, Plaintiff concludes that an IP address is "[m]uch like a telephone number" in that it is a "unique numerical code associated with a specific internet-connected device."[7] *Id.* at ¶ 26.

With this "unique numerical code," Plaintiff claims that "advertisers…[can] (i) '[t]arget [customers by] countries, cities, neighborhoods, and … postal code' and (ii) '…target specific households, businesses[,] and even individuals with ads that are relevant to their interests.'" *Id.*

---

[5] As explained in more detail below, the "device" identified by a public IP address is not, contrary to Plaintiff's assertion, his computer. [Oliver Decl., ¶¶ 41-44.] It is the gateway device (i.e., router) that allows Plaintiff access to the internet. [*Id.*]

[6] Again, as explained below, the "device" Plaintiff references here is not his computer; instead, it is the gateway device operating on the network to which his computer is connected. [Oliver Decl., ¶¶ 41-44.]

[7] At the risk of belaboring the point, the "specific internet-connected device" referenced by Plaintiff here is not his computer; it is the gateway device on the local network he is using at the time. [Oliver Decl., ¶¶ 41-44.]

at ¶ 27 (alterations in original). Plaintiff even goes so far as to claim that "'[c]ompanies can use an IP address … to personally identify individuals.'" *Id.* (alterations in original).

Based on the above, Plaintiff alleges that installation of these "trackers" violates California's Pen Register Statute because the "trackers" are "pen register" devices that have been installed and used without a court order. Plaintiff further claims that he and the putative class members suffered an "invasion of privacy" but identifies no injuries suffered by either him or the class. *See* Compl., Prayer for Relief (seeking statutory, but not actual, damages).

## III. STANDARDS OF REVIEW

### A. Standard for Motion to Dismiss Pursuant to Federal Rule 12(b)(1)

Under Rule 12(b)(1), a district court may properly dismiss an action for lack of subject matter jurisdiction "if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (citations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Indeed, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). Instead, in determining whether jurisdiction exists, the Court can and should consider all evidence before it. *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.").

### B. Standard for Motion to Dismiss Pursuant to Federal Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss for failure to state a claim, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, where claims "are based upon nothing more than repeated conclusory allegations of 'invasion of privacy,'" they "do not satisfy" federal pleading requirements. *Kobayashi v. McMullin*, No. 2:19-CV-06591-SSS (MAA), 2023 WL 11822286, at *8 (C.D. Cal. July 7, 2023), *report and recommendation adopted*, No. 2:19-CV-06591-SSS-MAA, 2023 WL 11822282 (C.D. Cal. Sept. 1, 2023).

## ARGUMENT

## IV. PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT.

### A. Constitutional Requirements For Standing

"Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001). The "irreducible constitutional minimum" of standing requires, at the very least, that the plaintiff "suffer[] an injury in fact… that is fairly traceable to the challenged conduct of the

defendant[.]" *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548. Moreover, what matters for standing is that the "named plaintiffs…allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id.* at 1547 n.6 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

"Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2204 (2021) ("*TransUnion*"). So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*.

For that reason, under Article III, "an injury in law is not an injury in fact." *TransUnion*, 141 S. Ct. at 2205. In *TransUnion*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*; *see also id.* ("Article III grants federal courts the power to *redress harms that defendants cause plaintiffs*, not a freewheeling power to hold defendants accountable for legal infractions." (emphasis added) (citation omitted)); *Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033 at *2 (S.D.N.Y. Dec. 5, 2021) ("[A] plaintiff must not only show that the defendant's conduct violated a statute, but that the plaintiff was '*concretely harmed* by a defendant's statutory violation.'" (quoting *TransUnion*, 141 S. Ct. at 2205)).

**B. <u>Plaintiff Has Not and Cannot Establish A Concrete Harm</u>.**

Here, the only potential "harm" alleged by Plaintiff is an invasion of privacy: "The collection of Plaintiff's and Class Members' personally identifying, non-anonymized information through Defendant's installation and use of the Trackers constitutes an invasion of privacy." Compl. at ¶ 72. But merely claiming that they suffered a harm "traditionally recognized as providing a basis for lawsuits in American courts," *TransUnion LLC*, 141 S. Ct. at 2204, is not enough. As this Court in *Sputz* noted, "*TransUnion* and cases decided since demonstrate that, where a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing." 2021 WL 5772033, at *3. Here, there are several "key elements" missing from Plaintiff's alleged invasion-of-privacy harm.

A plaintiff asserting an invasion of privacy claim must establish three "threshold issues": "a legally protected privacy interest, reasonable expectation of privacy, and serious invasion of privacy." *Loder v. City of Glendale*, 14 Cal. 4th 846, 891 (Cal. 1997). Stated another way, such a claim "requires '(1) intrusion into a private place, conversation[,] or matter, (2) in a manner highly offensive to a reasonable person.'" *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1127 (9th Cir. 2017) (quoting *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (Cal. 1998), as modified on denial of reh'g (July 29, 1998)). Ultimately, courts "ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

Plaintiff's claims fail to satisfy either prong of this test: (1) Plaintiff had no reasonable expectation of privacy in his public IP address and (2) Defendant's alleged collection and disclosure of that public IP address was not "highly offensive."

**a. Plaintiff Has No Reasonable Expectation of Privacy in His Public IP Address.**

Plaintiff bases his "invasion of privacy" claim on his allegation that the alleged "trackers" collected his "personally identifying, non-anonymized information." Compl. at ¶ 72. That is not true. A public IP address—the only type of IP address allegedly collected and disclosed here, [Oliver Decl. at ¶¶ 45-46]—does not "personally identify" anyone. Oliver Decl. at ¶¶ 28-29, 38. It, at most, can, but does not necessarily, identify the general location of the router that the device of a user, like Plaintiff, was connected to at the time he or she was on the internet. *Id.* at ¶ 29, 38. It does not identify any person (a public IP address does not indicate who is using the device). *Strike 3 Holdings, LLC v. Doe*, No. 17CV2317-JAH (BLM), 2017 WL 6389848, at *3 (S.D. Cal. Dec. 14, 2017) (noting that an ISP is "the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address"). It does not identify any personal device (a public IP address does not indicate which devices on are the local network). Oliver Decl. at ¶¶ 29, 38. It does not even identify a specific location (a public IP address can only identify the general area in which ISPs lease certain IP addresses). *Id.* at ¶ 29. *United States v. Kidd*, 394 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) ("To be sure, an IP address does not refer to a physical location itself."). As the Court in *United States v. Jenkins,* No. 1:18-CR-00181, 2019 WL 1568154 (N.D. Ga. Apr. 11, 2019), explained: "IP address information merely shows the location at which a device," i.e., a gateway device, "accesses the internet during a specific session. It does not follow [a] person around. Indeed, it does not even identify the user, just the location of internet access." *Id.* at *4

In other words, contrary to Plaintiff's claim, Compl. at ¶ 26, a public IP address is nothing like a phone number. Cell phone numbers are assigned to cell phones, which "faithfully follow [their] owners beyond public thoroughfares and into private residences, doctor's offices,

political headquarters, and other potentially revealing locales." *Carpenter v. United States*, 585 U.S. 296, 311 (2018). Public IP addresses follow users nowhere. When a user's device switches networks, his or her public IP address changes, too. Oliver Decl., ¶ 39. *See United States v. Contreras,* 905 F.3d 853, 857 (5th Cir. 2018) (stating that IP addresses have no "bearing on any person's day-to-day movement"). Also, an individual's telephone number changes infrequently, if ever. In contrast, public IP addresses change frequently, whether because the IP address lease has run, the gateway device has lost power or connection, or the user has simply changed local networks. Oliver Decl., ¶¶ 14-15.

A ZIP code is a more apt analog to a public IP address. A zip code identifies a general area, but it cannot tell you who lives in that ZIP code or where in that ZIP code a person lives. The same is true of a public IP address. Oliver Decl., ¶ 29.

Courts in California and elsewhere routinely find that the disclosure of a ZIP code alone does not result in an invasion of privacy. *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015) ("To the contrary, the authority shedding light on this issue points conclusively in the other direction: California does not recognize any common law or constitutional privacy right causes of action for requesting, sending, transmitting, communicating, distributing, or commercially using ZIP Codes."); *Hancock v. Urb. Outfitters, Inc.,* 830 F.3d 511, 514 (D.C. Cir. 2016) ("If, as the Supreme Court advised, disclosure of an incorrect zip code is not a concrete Article III injury, then even less so is Hancock and White's naked assertion that a zip code was requested and recorded without any concrete consequence.").

Indeed, because a public IP address, like a ZIP code, provides little, if any, information about individuals, Oliver Decl., ¶ 29., courts have repeatedly rejected any notion of privacy in a public IP address. *See, e.g., United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016)

("Generally, one has no reasonable expectation of privacy in an IP address when using the Internet."); *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone[.]"); *Jenkins*, 2019 WL 1568154, at *5 ("Defendant Jenkins had no reasonable expectation of privacy in an IP address ***assigned by the Internet Service Provider***[.]" (emphasis added).).

Plaintiff had no reasonable expectation of privacy in his public IP addresses. As a result, Plaintiff has not alleged and cannot allege an invasion of privacy, let alone a concrete harm arising from same. This Court lacks jurisdiction over Plaintiff's Complaint and, therefore, must dismiss it.

**b. Nothing Condé Nast Did Was "Highly Offensive."**

Even if Plaintiff could establish that he had a reasonable expectation of privacy in his public IP address (which he cannot), he still fails to allege that anything Condé Nast did was "highly offensive."

Although the highly-offensive determination is context-specific, courts agree that the alleged invasion must be "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 295 (Cal. 2009) (internal quotes omitted). Without these "important limiting principles," the California Supreme Court noted, the "common law right of privacy" would "becom[e] an all-encompassing and always litigable assertion of individual right." *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 25 (Cal. 1994).

No court, to Condé Nast's knowledge, has ever held that the collection and disclosure of general location information, like the information obtained from a public IP address or ZIP code, constitutes a "highly offensive" invasion of privacy. *See Folgelstrom v. Lamps Plus, Inc.,* 195

Cal. App. 4th 986, 993 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) (finding that the collection and use of ZIP codes "does not meet the standard of 'highly offensive'").

In fact, California courts have dismissed invasion of privacy claims, under both California's Constitution and common law, when the plaintiff claims that far more sensitive information was collected and disclosed. *See, e.g., In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding that disclosure of "the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices…does not constitute an egregious breach of social norms"); *Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (holding that the alleged disclosure of Social Security Numbers "do[es] not constitute an egregious breach" of social norms). *See also Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) (no standing to assert CIPA violations because "basic contact information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"); *Liau v. Weee! Inc.,* No. 23 CIV. 1177 (PAE), 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (data leak of "quotidian private information"—"customers' names, email addresses, and phone numbers, but not payment data or passwords"—does not give rise to a concrete harm); *Cooper v. Bonobos, Inc.,* No. 21 Civ. 854 (JMF), 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (no injury in fact where disclosed information included customers' "addresses, phone numbers, . . . email addresses, and IP addresses").

In sum, not only can Plaintiff not establish a privacy right in his public IP address, but, even if he could, he still would fail to allege an injury-in-fact because the disclosure of public IP addresses is not "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez*., 47 Cal. 4th at 295 (internal quotes omitted). Plaintiff's Complaint

must be dismissed.

## V. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE CALIFORNIA INVASION OF PRIVACY ACT, SECTION 638.51(A).

Under CIPA, "pen registers" are largely defined by "the type of data a pen register collects" and less on the technical process by which it does so. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

CIPA defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis added). And CIPA precludes "a person…[from] install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a).

That does not mean, however, that anyone can sue an entity who, without a court order, installs or uses a pen register. Only persons who have been "injured" by the installation or use can. Cal. Penal Code § 637.2 (a) (stating that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation"). In other words, to bring suit for a violation of the California Pen Register Statute, Plaintiff must adequately allege not only a violation but also that the violation resulted in some other injury to him. *Miller v. Hearst Commc'ns, Inc., No*. CV 12-0733-GHK PLAX, 2012 WL 3205241, at *7 (C.D. Cal. Aug. 3, 2012) (holding, in relation to statutory standing under a similar California statute, that because the "law's remedy provision requires an 'injury' in conjunction with a violation" and "[b]ecause Plaintiff fails to allege a cognizable injury, she lacks statutory standing for her…claim, regardless of whether her allegations are sufficient to state a violation of

the…law”). Plaintiff has failed to do so here. He lacks statutory standing to bring his claim, so his claim must be dismissed.

### A. <u>Plaintiff Lacks Statutory Standing to Sue under the California Pen Register Act.</u>

Although CIPA does not define what it means to be “injured” by a violation of the California Pen Register Act, the Northern District of California in *Shah* analyzed the injury requirement and found that the plaintiffs had been “injured” under the statute because they “plausibly alleged” that they “were…being tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree to such tracking.” 2024 WL 4539577, at *5. In support of its conclusion, the *Shah* court stated: “the collection of [the plaintiffs’] IP addresses through the Trackers allows the third parties to obtain ‘personally identifying, non-anonymized information,’ and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising.” *Id.*

As explained above, that is not accurate. The public IP addresses allegedly collected by Google, Audiencerate, and Neustar, [Oliver Decl., ¶¶ 45-46], did not “personally identify” Plaintiff [*Id.* at ¶¶ 38-39]. At most, the IP addresses identified the ISP of the internet service he was using at the time he visited the Websites and the general, ZIP-code sized location in which he was located when he did so. *Id.* at ¶ 29.

Moreover, the alleged pen registers here (i.e., the “trackers”) were not used to collect ***Plaintiff’s*** “dialing, routing, addressing, or signaling information,” making it impossible for Plaintiff to be “injured” at all. Declaration of Robyn Feldstein in Support of Motion to Dismiss (“Feldstein Decl.”), ¶ 3, Ex. A (Order Sustaining Demurrer in *Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30742 (Cal. Super. Ct. April 23, 2024)) (“To the extent that Defendant is

arguing that, to be an injured party, Plaintiff must demonstrate her private information was collected, the Court agrees.”).

The reason for this is simple. A public IP address is assigned to a gateway device (not a personal device, like Plaintiff’s computer) and facilitates communication between the gateway device and a web server. Oliver Decl. at ¶¶ 10-13. Indeed, when a gateway device requests certain information from a web server, it provides the web server with the public IP address it has been assigned so that the web server will know where to send its response. *Id.* at ¶¶ 32-35. The gateway device-web server line of communication does not involve individual users, such as Plaintiff, and does not identify Plaintiff or any individual users. *Id.* at ¶¶ 32-38. The only thing the IP addresses that plaintiff alleges are “dialing, routing, addressing, or signaling information” enables the recipient to do is respond to the gateway device being used at the time. *Id.* at ¶¶ 35-37. The minute the user (i.e., Plaintiff) changes networks, that public IP address is no longer associated with the user at all. *Id.* at ¶ 39.

Even further, the “dialing, routing, addressing, or signaling information” allegedly collected here was never transmitted from ***Plaintiff’s*** computer. *Shah*, 2024 WL 4539577, at *3 (N.D. Cal. Oct. 21, 2024) (noting that, under the California Pen Register Statute, “[a]ll that is required is that the Trackers record addressing information transmitted ***by the user's computer or smartphone*** in connection with the outgoing HTTP request to [defendant’s] website” (emphasis added)). It was transmitted from the gateway device on the local network Plaintiff was using when he visited the Websites. Oliver Decl. at ¶ 34. That is not to say that Plaintiff’s computer never transmitted “addressing” information; it did. It sent its ***private*** IP address to the gateway device so that the gateway device could identify and communicate directly with it. *Id.* at ¶¶ 30-31. But that “addressing” information never went beyond the gateway device and certainly was

never collected by Condé Nast or any of the third parties whose "trackers" were allegedly installed on the Websites. *Id.* at ¶ 37.

Plaintiff has failed to allege that he, personally, was injured by any alleged violation of the California Pen Register Statute by Condé Nast. Therefore, Plaintiff has failed to state an actionable claim under CIPA. His claim must be dismissed.

### B. <u>The Rule of Lenity Compels This Court to Dismiss Plaintiff's Complaint.</u>

The rule of lenity "generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *People v. Reynoza*, 15 Cal. 5th 982, 1012, 546 P.3d 564, 583 (Cal. 2024) (quoting *People v. Nuckles* 56 Cal. 4th 601, 611 (Cal. 2013).) The rule of lenity is intended to ensure that before defendants are held liable under a criminal statute, they are given reasonable notice of the consequences of their actions. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).

Rooted in California's Penal Code, CIPA and its California Pen Register Statute are criminal laws, the violation of which can result in severe criminal punishment. *See* Cal. Penal Code § 638.51(c) ("A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment."). The rule of lenity, therefore, applies fully to the California Pen Register Act, regardless of whether it is being enforced in a criminal or, as here, a civil setting. *United States v. Thompson/Ctr. Arms Co*., 504 U.S. 505, 518 (1992) (applying rule of lenity in civil action because "although it is a tax statute that we construe now in a civil setting, the [statute] has criminal applications"); *Crandon v. United States*, 494 U.S. 152, 158, 110 S. Ct. 997, 1001, 108

L. Ed. 2d 132 (1990) ("[B]ecause the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage.").

Under the rule of lenity, where a criminal statute, such as the California Pen Register Statute here, "is ambiguous," courts must "resolv[e] the ambiguity strictly to apply only to conduct clearly covered." *United States v. Balint*, 201 F.3d 928, 934 (7th Cir. 2000).

Cases decided within just the last twelve months make clear that the California Pen Register Statute is ambiguous in a number of ways, including:

1. Does the California Pen Register Statute apply to all outgoing information or just to destination information of communications? *Compare Shah,* 2024 WL 4539577, at *3 ("All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to Fandom's website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue.") *with* Feldstein Decl., ¶ 4, Ex. B (Order Sustaining Demurrer in *Palacios v. Fandom, Inc.*, Case 24STCV11264 (Cal. Super. Ct. September 24, 2024) ("The Court concludes that, as alleged, the Accused Code is not a pen register because it does not collect the destination information of communications from Plaintiff's computer.").

2. Does the California Pen register Statute apply to IP addresses affirmatively provided to websites? *Compare Shah*, 2024 WL 4539577, at *6 ("To the extent that Fandom believes the statute may impose too many burdens when applied to the realities of modern technologies, and that it is too unwieldy to obtain users'

> consent through disclosures of the practices at issue, the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts.") *with Licea v. Hickory Farms LLC,* No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) ("The court also finds public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator.").

If California courts, themselves, cannot even agree on the interpretation of the California Pen Register Statute, how is Condé Nast expected to be on "fair notice of what is and is not criminal"? *United States v. Saathoff,* 708 F. Supp. 2d 1020, 1036 (S.D. Cal. 2010). It's not, and, as the United States Supreme Court stated "[i]n these circumstances, the rule of lenity, not to mention a dose of common sense, favors a strict construction." *Bittner v. United States*, 598 U.S. 85, 103 (2023).

Indeed, if the Court were to apply the rule of lenity to the California Pen Register Statute, it would not be the first court to do so with regard to a civilly enforced, criminal privacy statute. Just last month, the Supreme Judicial Court of Massachusetts held in *Vita v. New England Baptist Hosp*., No. SJC-13542, 2024 WL 4558621 (Mass. Oct. 24, 2024), that because it could not conclude that "browsing and other similar website interactions of the kind [plaintiff] alleges she engaged in on the hospitals' websites are 'wire communication[s]' under the wiretap act," the rule of lenity required the court find that they were not and dismiss the claim. *Id.* at *15.

This Court should do the same and find that because the alleged "trackers" did not collect "destination information" and only collected IP addresses that were affirmatively provided by

website users, the California Pen Register Statute, as interpreted under the rule of lenity, does not apply to Condé Nast's conduct here. Plaintiff's Complaint should be dismissed.

## VI. CONCLUSION

Whether resulting from a misunderstanding of the underlying technology or a disingenuous attempt to survive dismissal, Plaintiff's allegations in the Complaint are misleading. Throughout the Complaint, Plaintiff intimates, without ever explicitly stating it, that the IP addresses allegedly collected on Condé Nast's websites by Google, Audiencerate, and Neustar were the IP addresses assigned to his personal computer. They were not. They were public IP addresses assigned by ISPs to the gateway device on the local network he was using at the time. They did not identify Plaintiff. They did not identify Plaintiff's device. They barely identified Plaintiff's location, offering, at best, a general, ZIP-code sized area in which he could have been located. Such generalized location data has never been held to be private, and this Court should not be the first to do so. Plaintiff has failed to allege an injury-in-fact sufficient to establish Article III standing. His Complaint must be dismissed.

In the alternative, this Court should dismiss Plaintiff's Complaint because he has failed to state an actionable claim under California's Pen Register Statute. That statute makes clear that, in order for Plaintiff to assert his claim, he must allege that Condé Nast's installation and use of a pen register injured ***him***, which Plaintiff has not and cannot do. The "dialing, routing, addressing, or signaling information" allegedly collected here did not identify Plaintiff, did not relate to any communications involving Plaintiff, and was not even transmitted from Plaintiff's computer. It all came from the gateway device on the network Plaintiff was using at the time he visited the Websites. Plaintiff cannot legitimately claim to be injured by the collection of information he never sent.

Finally, to the extent the Court is uncertain about whether the California Pen Register Statute should be interpreted to apply to websites' collection of visitors' public IP addresses, as several courts have been, that uncertainty is, in and of itself, reason to dismiss the Complaint. In order to be held liable under a criminal statute, which the California Pen Register Statute is, the defendant must be on fair notice of what is and is not allowed under the statute. Clearly, what internet protocol technology is and is not allowed under the analogue-era California Pen Register Statute is uncertain. Therefore, the rule of lenity requires a narrow reading of the statute and, in turn, a dismissal of Plaintiff's Complaint. Plaintiff's Complaint should be dismissed, in its entirety and without leave to amend.

Dated: November 11, 2024

Respectfully submitted,

BAKER & HOSTETLER LLP

*/s/ Robyn M. Feldstein*

Robyn M. Feldstein
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.589.4200
rfeldstein@bakerlaw.com

Matthew Pearson (*pro hac vice* forthcoming)
Baker & Hostetler LLP
600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626
Tel: 714.754.6600
mpearson@bakerlaw.com

*Attorneys for Defendant*